**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **T. S.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**GATEWAY, INC., d/b/a business as Best American Inn,**<br><br>**Defendant.** | **CIVIL ACTION FILE**<br><br>**NO. 1:25-CV-5444-MHC** |

## ORDER

This case comes before the Court on Defendant Gateway, Inc., d/b/a Best American Inn's Motion to Dismiss Plaintiff's First Amended Complaint ("Mot. to Dismiss") [Doc. 15].

## I. BACKGROUND[1]

Defendant owns, operates, and manages the Best American Inn (the "Inn") located and 5021 Old National Highway, College Park, Georgia 30349. Am. Compl. ¶¶ 2-3. As alleged in the Amended Complaint, Defendant "directed,

[1] Because this case is before the Court on Gateway's Motion to Dismiss, the facts are presented as alleged in Plaintiff's Amended Complaint [Doc. 12], which is the operative pleading in this case. See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at the Best American Inn at all relevant times." Id. ¶ 84. Plaintiff alleges that the Inn has been "a notorious hotspot for illicit activity that has been attracting sex trafficking and prostitution ventures for years." Id. ¶ 4. From approximately November 1, 2017, through February 5, 2018, non-parties Quavise Desmond Austin ("Austin"), Ivan Jerel Lightsey ("Lightsey"), and their associates forced Plaintiff to have sex for money at the Inn. Id. ¶¶ 5-6. Austin and Lightsey were known in the Old National Highway area for illegal activity, including selling illegal narcotics, and both had criminal histories. Id. ¶ 24. Plaintiff was sixteen years old at the time she was trafficked and met Austin on Old National Highway after coming to Atlanta via Greyhound bus. Id. ¶¶ 6, 23. During the time that Plaintiff was being trafficked at the Inn, Austin and Lightsey were trafficking another young female for sex and selling narcotics out of the Inn. Id. ¶ 28. Austin and Lightsey also used the Inn for illicit purposes prior to this time period and were "familiar with the hotel and its staff as well as some of the long-term residents there." Id. ¶ 26.

Defendant usually rented Austin and Lightsey the same two rooms, one of which was Room 214 (the "Room"), to keep a "consistent address" at the Inn for their illicit conduct, even when Austin and Lightsey left the Inn for days at a time.

Id. ¶¶ 31-32. Austin and Lightsey used these rooms for trafficking Plaintiff; men who purchase sex ("Johns") came to the Inn through the lobby and went to the designated room to engage in commercial sex with Plaintiff. Id. ¶¶ 34-35, 37. Upon entering the Room, the Johns gave Plaintiff money for the sex act, stayed in the Room for around twenty to thirty minutes, and left. Id. ¶ 37. Austin either waited in the Room or in the stairs for Plaintiff to finish with each John. Id. ¶ 46. Plaintiff would then give the money to Austin, and Austin and Lightsey used a portion of the money to book the room again for the next night. Id. ¶¶ 37, 39. Plaintiff was sold for sex approximately ten times a day to multiple Johns. Id. ¶ 38. There was heavy foot traffic in and out of the Room, and people were constantly loitering in the hallway. Id. ¶ 44.

Austin and Lightsey repeatedly beat Plaintiff to control her, often leaving her with visible injuries. Id. ¶ 47. Austin provided Plaintiff with alcohol and drugs; specifically, she was given ecstasy pills when she was too tired to continue the commercial sex activity. Id. ¶ 49. Austin also took Plaintiff to a nearby adult entertainment store to buy lingerie; this lingerie was often left in one of the rooms. Id. ¶ 41. Austin and Plaintiff would also regularly go to the vending machines in the common area of the Inn to purchase condoms to use for Plaintiff's commercial sex activities; Defendant kept the vending machine stocked with condoms. Id.

¶ 42. Plaintiff took showers in between each session with a John, and Austin or Plaintiff requested extra towels multiple times a day but did not allow housekeeping to enter the room. Id. ¶ 43. When Plaintiff was not in a session with a John, she would loiter in the parking lot of the Inn wearing revealing clothing, and Johns would approach her to purchase sex acts from her. Id. ¶ 50. Plaintiff could be observed by Defendant's staff when she loitered at the front of the Inn. Id. ¶ 52.

Austin and Lightsey paid to use the Inn's Wi-Fi network to communicate with each other and with Plaintiff about their trafficking and drug sales. Id. ¶ 40. Austin and Lightsey got into physical altercations with each other and with others at the Inn, at times loud enough to be heard by other occupants and staff. Id. ¶¶ 29, 48. However, law enforcement was not contacted about these altercations; in fact, the Inn would alert its occupants, including Austin and Lightsey, about law enforcement presence on the property. Id. ¶¶ 30, 48. Plaintiff alleges that law enforcement had conversations with Defendant about illegal activity occurring at the Inn, but Defendant nonetheless rarely called law enforcement for anything other than making someone leave the premises. Id. ¶ 54-55. Plaintiff also alleges that Defendant violated its policies and normal business model to cater to pimps, prostitutes, and sex traffickers by:

- stocking condoms in the vending machine in the common area of the Inn;
- permitting multiple individuals to enter the Inn's lobby and go straight to a room without identification or proof of room registration;
- permitting men seeking sex to loiter in the parking lot;
- refusing to call the police when they became aware of criminal incidents involving Austin and Lightsey assaulting others; and
- alerting occupants when law enforcement was on the premises.

Id. ¶¶ 36, 51, 56.

The Inn has a number of publicly available Google reviews which report allegations of prostitution and other illicit activities occurring at the Inn before and during the period in which Plaintiff was trafficked. Id. ¶ 67. These reviews include the following:

- a review from 2016 stating: "This place is for Drug attics [sic] and prostitutes! . . . THE WALLS ARE PAPER THIN SO IN [sic] YOU DON'T WANT TO HEAR PEOPLE HAVING SEX. . . GO SOMEWHERE ELSE. I CAN'T BELIEVE THIS PLACE IS STILL OPEN[.] PITIFUL NASTY DISGUSTING WITH GREAT TV SERVICE."
- a review from 2017 stating: "Rude staff. Rooms smell. Girls selling sex for money[.]"
- a review from 2018 stating: "Prostitute's [sic] and drug dealers everywhere. . . I . . . had no problems until they put [me] in room #214. Nasty Underwear was found under the bed so was trash. Beer in the refrigerator. . . . There was a crack pipe in the room under the pillow."

Id. ¶¶ 68-69, 71. Plaintiff alleges that officers with the College Park Police Department associated the Inn with illegal activity, including drugs and prostitution. Id. ¶ 77. Plaintiff alleges that in less than three years, including the period that Plaintiff was trafficked at the Inn, over twenty wanted persons were arrested on the premises. Id. ¶ 78. At least one College Park Police Department officer had a conversation with the Inn's staff regarding the illegal activity that took place there. Id. ¶ 81.

Based on the foregoing, Plaintiff asserts the following claims: (1) civil liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA") 18 U.S.C. § 1595(a) (Count 1); (2) premises liability under Georgia law (Count 2); and (3) public and private nuisance under Georgia law (Count 3). Id. ¶¶ 96-112. Plaintiff seeks "special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law" plus attorney's fees and expenses. Id. ¶¶ 115, 117. Defendant seeks dismissal of each of Plaintiff's claims. Mot. to Dismiss at 1-2.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While this pleading standard does not require

"detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft, 556 U.S. at 678 (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, but these

allegations must also be construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III. DISCUSSION

Defendant argues that Plaintiff's TVPRA claim should be dismissed because Plaintiff does not adequately allege that Defendant participated in a joint venture with her traffickers. Mot. to Dismiss at 5-9. Defendant also maintains that Plaintiff's remaining state law premises liability and nuisance claims are time-barred. Id. at 9-12. The Court addresses each argument in turn.

### A. Plaintiff Adequately Alleges That Defendant Participated in a Joint Venture as Required Under the TVPRA.

The TVPRA permits a victim of sex trafficking to bring a direct civil action against the perpetrator of her trafficking or a beneficiary civil claim against those that knowingly benefited from the sex-trafficking. 18 U.S.C. § 1595(a).

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a

> venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Id. (emphasis added). The Eleventh Circuit has established the following requirements to support a beneficiary claim under the TVPRA:

> [A] plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 719 (11th Cir. 2021). Defendant argues that Plaintiff does not satisfy the second element because the Amended Complaint "is devoid of a single allegation that Defendant participated in a venture, which is an essential element of the TVPRA." Mot. to Dismiss at 5. Specifically, Defendant argues that Plaintiff's allegations of renting hotel rooms combined with observing signs of trafficking are not enough. Id. at 5-6 (quoting Doe (S.J.C.) v. ESA P Portfolio LLC, No. 1:24-CV-02423-JPB, 2024 WL 4808137, at *5 (N.D. Ga. Nov. 15, 2024)).

The Eleventh Circuit has recently clarified what is required to satisfy Red Roof's second element of "taking part in a common undertaking or enterprise involving risk and potential profit." See generally A.G. v. Northbrook Indus., Inc., No. 24-13294, 2026 WL 864178 (11th Cir. Mar. 30, 2026); Plaintiff's Notice of

Supplemental Authority [Doc. 20] (notifying the Court of the issuance of Northbrook). In Northbrook, the Eleventh Circuit discussed a circuit split on the issue and stated the following:

> [S]ome courts have erroneously concluded that the provision of standard commercial services to traffickers, when paired with knowledge of their activities, adds up to "participation in a venture." See, e.g., F.C. v. Jacobs Sols. Inc., 790 F. Supp. 3d 1158, 1187 (D. Colo. 2025) (describing the theory that "alleging a continuous business relationship" between an alleged beneficiary and a trafficker, when the beneficiary "knew or should have known" of the trafficking, amounts to participation in a venture).
>
> Appellants urge this Court to adopt that theory and to hold that merely renting a hotel room to traffickers, coupled with constructive or actual knowledge of sex trafficking, constitutes "participation in a venture." . . . To share legal risks and profits with a perpetrator under the TVPRA, "something more than engaging in an ordinary buyer-seller transaction is required[.]" [Doe 1 v. Apple Inc., 96 F.4th 403, 415 (D.C. Cir. 2024)].
>
> . . .
>
> Admittedly, our requiring "something more" than an arms-length transaction is not very illuminating guidance. Id. This is a fact-specific inquiry that courts must engage in when evaluating beneficiary claims. For instance, "something more" may include offering "personalized support" to a sex trafficker. See [G.G. v. Salesforce.com, Inc., 76 F.4th 544, 563 (7th Cir. 2023)].

Id. at *7. The Eleventh Circuit went on to find that summary judgment was not appropriate on the plaintiff's TVPRA claim because a "jury certainly could find it significant that United Inn allowed A.G. and G.W., two seventeen-year-old girls dressed provocatively who were loitering in common areas and purchasing

condoms in the lobby, back into a room even though they produced no identification and were not listed on the room reservation." Id. at *8.

The Eleventh Circuit found that this event, "paired with United Inn's apparent friendliness toward and awareness of sex trafficking on its property"[2] could support a reasonable inference that the defendant hotel cooperated with the sex trafficking operation. Id.

Here, Plaintiff alleges facts very similar to what the Eleventh Circuit in Northbrook found demonstrated that the hotel was friendly to sex trafficking, including that:

---

[2] The Eleventh Circuit found that the following evidence demonstrated that the defendant hotel was friendly towards sex trafficking:

> Sergeant King testified that he investigated online advertisements for commercial sex with minors at United Inn. Also, A.G. and G.W.'s traffickers evidently favored United Inn; G.W. testified that it was the only hotel Obie returned to three times while trafficking her. United Inn admittedly did not follow the police's recommendation to hire more security and violated Georgia law by failing to post an anti-trafficking notice in its lobby. A.G. and G.W., while dressed provocatively, found "customers" in the hotel parking lot, loitered in the hotel common areas, and purchased goods from the lobby convenience store, including condoms. Also, there were two occasions where groups of men argued with A.G. and G.W. from the hallway and banged on their hotel room door.

Id. at *8.

- The Inn is a notorious hotspot for illicit activity, and Austin and Lightsey used the Inn for drug and sex trafficking for an extended period such that they were "familiar with the hotel and its staff as well as some of the long-term residents there," Am. Compl. ¶¶ 4, 26;

- There was heavy foot traffic in and out of the room, and Johns were constantly loitering in the hallway and parking lots, id. ¶¶ 44, 50;

- Plaintiff dressed provocatively and loitered in the Inn's parking lot; id. ¶ 50;

- Plaintiff and Austin regularly purchased condoms at the Inn's vending machines, id. ¶ 42; and

- Austin and Lightsey got into altercations with each other and with others at the Inn, id. ¶¶ 29, 48.

Plaintiff also alleges that Defendant provided personalized support to her traffickers:

- Defendant routinely rented the same two rooms to Austin and Lightsey so that they could keep a consistent address at the Inn, id. ¶¶ 31-32;

- Defendant did not call law enforcement on Austin and Lightsey even after they got into loud altercations, id. ¶¶ 30, 48;

- Defendant allowed Johns to loiter and to go to the Room without proof of room registration or identification, id. ¶¶ 44, 50-51;

- Defendant alerted residents at the Inn, including Austin and Lightsey, when law enforcement was on the property, id. ¶¶ 30, 48.

Thus, Plaintiff has sufficiently alleged that Defendant participated in a sex trafficking operation under the guidance set forth in Northbrook.

Further, the cases Defendant relies upon, Red Roof and K. H. v. Riti, Inc., No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024), are distinguishable from the present matter. In Red Roof, four sex trafficking victims sued the hotel operators, employees, owners, franchisees, and franchisors of the hotels where the plaintiffs were trafficked. Red Roof, 21 F.4th at 719. The district court found that the plaintiffs failed to plausibly state TVPRA claims against the franchisors of the hotels and dismissed those claims. Id. Although the plaintiffs alleged that hotel employees supported the traffickers, their only allegations as to the franchisors were that they received revenue from the renting of rooms to the traffickers, they investigated hotels, controlled staff training, and read online reviews which suggested trafficking was occurring at the hotels. Id. at 726. The Eleventh Circuit determined that the franchisors did not take part in "the common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers" because "observing something is not the same as participating in it." Id. Put another way, the franchisors in Red Roof were not alleged to have affirmatively participated in the alleged sex trafficking venture, whereas in this case Plaintiff alleges specific instances of affirmative support by Defendant. See, e.g., Am. Compl. ¶¶ 31-32 (renting the same two rooms to Austin and Lightsey), 30, 48 (alerting Austin and Lightsey when law enforcement was present at the Inn); see

also Doe (K.B.) v. G6 Hosp., LLC, No. 1:23-CV-2597-TWT, 2023 WL 8650785, at *9 (N.D. Ga. Dec. 14, 2023) (finding that the plaintiff had sufficiently alleged a TVPRA claim where she alleged that the hotel "purposely provided rooms to the traffickers that were in the back and therefore not visible from the street" because that was "an affirmative act," and distinguishing Red Roof, where "the plaintiffs did not allege that the franchisors did anything to assist the traffickers").

In Riti, the plaintiff sued the owner and operator of the hotel where she was trafficked, alleging that the defendant rented rooms to traffickers and knew or should have known that that trafficking was occurring at the hotel "based on online reviews, police reports, and visible indicators." Riti, 2024 WL 505063, at *3. The Eleventh Circuit affirmed the dismissal of the plaintiff's TVPRA claim, holding:

> K.H.'s allegations amount to contentions that Riti financially benefitted from renting hotel rooms to K.H.'s trafficker and that Riti observed signs of sex trafficking at the hotel. But as we made clear in Red Roof, allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture and observing signs of sex trafficking "is not the same as participating in it." Id.

Id. at *4. Again, the plaintiff in Riti did not allege the hotel's affirmative participation in the sex trafficking venture, while Plaintiff does so here.

Accordingly, Defendant's Motion to Dismiss is **DENIED** as to Plaintiff's TVPRA claim.

### B. Plaintiff's Premises Liability and Nuisance Claims Are Not Untimely Under Georgia Law.

Defendant argues that Plaintiff's premises liability and nuisance claims[3] are barred by O.C.G.A. §§ 9-3-33 (providing a two-year statute of limitations), 9-3-99 (providing a tolling provision for the statute of limitations for the victims of a crime) and § 9-3-33.1 (establishing a statute of repose for victims of childhood sexual abuse), and that Plaintiff has failed to identify an active criminal prosecution which would toll the statute of limitations. Mot. to Dismiss at 9-12. Specifically, Defendant argues that Plaintiff was required to bring her claims sometime in 2021 under the statute of limitations, and sometime in 2024 under the statute of repose.[4] Id. at 10. In response, Plaintiff argues that the Johns who raped

---

[3] The Court notes that the Georgia statute of limitations does not apply to Plaintiff's public nuisance claim. See Anneberg v. Kurtz, 197 Ga. 188, 194 (1944) ("The rule that the statute of limitations does not run in favor of a nuisance, only applies to public nuisances, and grows out of the impropriety of imputing laches to the public.") (quotation omitted). However, Plaintiff also asserts a private nuisance claim.

[4] Defendant further argues that Plaintiff has not sufficiently identified any criminal prosecutions of culpable parties that would toll the statute of limitations because O.C.G.A. § 9-3-99 applies only to active criminal investigations. Id. at 11-12 (citing Armstrong v. Cuffie, 311 Ga. 791, 796 (2021)). Defendant relies solely on Armstrong for this proposition, but this case merely states that the statute of limitations "may be tolled by OCGA § 9-3-99, which relates to active criminal prosecutions." 311 Ga. at 796. Although it does not appear that the Georgia Supreme Court has ruled on whether the statute of limitations is only tolled for active criminal investigations, the Georgia Court of Appeals has held that "the

Plaintiff have not yet all been convicted and therefore O.C.G.A. § 9-3-99 applies, and that eight years is the sum total of available time that Plaintiff had to file her claims. Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss [Doc. 16] at 22. Plaintiff further argues that the statute of repose does not apply here because Plaintiff does not allege that Defendant committed a qualifying offense against her. Id. at 25-26.

Rule 12(b)(6) dismissal of claims on statute of limitations grounds

> is appropriate only if it is apparent from the face of the complaint that the claim is time-barred because a statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint. In other words, at the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute.

---

tolling provision 'applies regardless of whether the defendant in the case has been accused of committing the crime from which the cause of action arises.'" Benjamin v. Thomas, No. 1:16-CV-1632-WSD, 2016 WL 5394118, at *5 (N.D. Ga. Sept. 27, 2016) (quoting Harrison v. McAfee, 338 Ga. App. 393, 401 (2016)); Bullock v. Bradford Ridge Owner, LLC, No. 1:23-CV-988-MLB, 2023 WL 12148021, at *2 (N.D. Ga. Dec. 15, 2023) ("The Georgia Court of Appeals has suggested the crime-victim exception applies even 'in cases where the possibility of prosecution remains outstanding.'") (quoting Winston v. Walsh, 2019 WL 3068451, at *5 (M.D. Ga. July 12, 2019) and collecting cases); see also B.W. v. G6 Hosp. Prop. LLC, No. 1:24-CV-00195-JPB, 2025 WL 3557926, at *6 (N.D. Ga. Feb. 11, 2025) (holding that O.C.G.A. § 9-3-99 tolled the statute of limitations unless any criminal cases involving the twenty-five assailants who purchased sex with the trafficked plaintiff "became final more than two years before the filing date").

Lindley v. City of Birmingham, 515 F. App'x 813, 815 (11th Cir. 2013) (alterations accepted and quotations omitted). Generally, the statute of limitations for torts in Georgia is two years. O.C.G.A. § 9-3-33. However, the statute of limitations provides equitable tolling for victims of crimes:

> The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years, except as otherwise provided in Code Section 9-3-33.1 [the statute of repose].

O.C.G.A. § 9-3-99. O.C.G.A. § 9-3-33.1(b) provides, in pertinent part, that:

> 2(A) Notwithstanding Code Section 9-3-33, any civil action for recovery of damages suffered as a result of childhood sexual abuse committed on or after July 1, 2015, shall be commenced:
>
> > (i) On or before the date the plaintiff attains the age of 23 years; or
> >
> > (ii) Within two years from the date that the plaintiff knew or had reason to know of such abuse and that such abuse resulted in injury to the plaintiff as established by competent medical or psychological evidence.

O.C.G.A. § 9-3-33.1(b)(2)(A). Childhood sexual abuse as defined by O.C.G.A. § 9-3-33.1 includes an enumerated list of acts which must be committed by the defendant against the plaintiff. Id. § 9-3-33.1(a)(1).

Defendant mischaracterizes O.C.G.A. § 9-3-99; it operates to pause the two-year statute of limitations period for six years, not to provide Plaintiff with six years total in which to bring her claims. See O.C.G.A. § 9-3-99 ("The running of the period of limitations . . . shall be tolled from the date of the commission of the alleged crime . . . until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years[.]") (emphasis added). Here, Plaintiff alleges that she was trafficked between November 1, 2017, to February 5, 2018, and she initiated this suit on September 24, 2025. Am. Compl. ¶¶ 5-6. Plaintiff also alleges that all the culpable parties, i.e. the men who trafficked and raped her, have been not yet been criminally convicted. Id. ¶ 119. Thus, based on the allegations in the Amended Complaint, O.C.G.A. § 9-3-99 applies, and the statute of limitations was tolled starting on November 1, 2017, for the maximum of six years before the two-year limitations period begins to run, providing Plaintiff with eight years (until November 2025) to bring her claims. Therefore, it is not apparent on the face of the Amended Complaint that Plaintiff's state law claims, which were initiated in September 2025, are barred by the statute of limitations. See B.W., 2025 WL 3557926, at *6 ("Because Plaintiff filed her Complaint within eight years of the offenses, Plaintiff's claims are timely unless those men's criminal cases became final more

than two years before the filing date. Here, the Court lacks any information about those men, so it cannot hold that the claims are clearly time-barred.").

Plaintiff's claims are also not time-barred under the statute of repose; this statute does not apply because Plaintiff does not allege that Defendant committed any of the enumerated acts against her. See Doe v. Saint Joseph's Cath. Church, 357 Ga. App. 710, 712 (2020), aff'd in part, rev'd in part on other grounds, 313 Ga. 558 (2022) ("Here, Doe does not allege that any of the named defendants . . . engaged in conduct against him that was a criminal offense listed in OCGA § 9-3-33.1(a)(1). None of the defendants' alleged conduct amounts to child molestation or other listed sex crimes, so the present action is not one seeking damages for 'childhood sexual abuse' as defined in the statute. Rather, as Doe explains, it is an action more broadly based on the defendants' breach of duties they owed to him to protect him as a minor and parishioner and the defendants' conduct in allegedly covering up the abuse. Accordingly, OCGA § 9-3-33.1 does not apply, and any argument that it operated as a statute of repose is inapposite in this case."). Therefore, it is not apparent on the face of the Amended Complaint that Plaintiff's state law claims are time-barred by the statute of repose. See B.W., 2025 WL 3557926, at *6 ("However, the statute [of repose] does not apply to claims like Plaintiff's that—rather than alleging direct or *respondeat*

*superior* liability for sexual abuse—seek to hold a party accountable for failure to protect a minor against abuse.").

Accordingly, Defendant's Motion to Dismiss is **DENIED** as to Plaintiff's premises liability and nuisance claims.

## IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendant Gateway, Inc., d/b/a Best American Inn's Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 15] is **DENIED**.

**IT IS SO ORDERED** this 15th day of April, 2026.

Mark H. Cohen

MARK H. COHEN
United States District Judge